BOBBY NEALY,
    *Plaintiff*,

v.

CITY OF MERIDEN, *et. al.*,
    *Defendants*.

No. 3:17-cv-00033 (VAB)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Bobby Nealy ("Plaintiff"), formerly incarcerated and proceeding *pro se*, filed this action in state court under 42 U.S.C. § 1983. Mr. Nealy has asserted several federal and state constitutional and statutory violations: including due process; equal protection; freedom from racial discrimination; freedom of association; deprivation of liberty; and cruel and unusual punishment.

Defendants, City of Meriden, Meriden Police Department, Detective John Williams, Sergeant Mennone, Sergeant Cardona, Officer Welles, Officer Witkins, and the members of the CSU Unit (collectively "Defendants"), removed the case here and has filed a motion for summary judgment.

For the following reasons, the Court **GRANTS** Defendants' motion as to the federal claims and declines to exercise supplemental jurisdiction over Mr. Nealy's remaining state law claims and therefore remands them back to Connecticut Superior Court.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    Factual Allegations

In the early morning hours of April 5, 2014, Desiree McKnight ("Ms. McKnight"), Mr. Nealy's girlfriend, allegedly returned to her apartment after an evening out. ECF No. 25, at 2.

1

Mr. Nealy allegedly was sleeping on Ms. McKnight's living room couch. *Id.* As Ms. McKnight approached her apartment, she allegedly noticed two masked men—one with a gun. *Id.* Ms. McKnight allegedly entered her home and closed the door behind her, but the men allegedly kicked in the door. One man allegedly demanded her money, while the other allegedly brandished the gun. *Id.* The unarmed man allegedly dragged Ms. McKnight by her hair to an upstairs bedroom and allegedly threatened to kill her, if she did not give up her money and jewelry. *Id.* According to Ms. McKnight, the man fled the bedroom when he heard a gunshot. *Id.*

While Ms. McKnight was upstairs, Mr. Nealy allegedly awoke and fled through a sliding door—leaping from the balcony to get help. *Id.* As he left, he allegedly heard a gunshot behind him. *Id.* In his search for help, Mr. Nealy allegedly saw police vehicles approach the residence. *Id.* Mr. Nealy was taken to the hospital for treatment of a gunshot wound to his upper arm. *Id.*

Numerous officers allegedly responded to the reported home invasion and shooting. *Id.* Officer Welles allegedly observed damage to the door frame, $1,206 on a table in the living room, and a bullet hole through the sliding door blinds and door frame. *Id.* at 3–4. Officer Witkins interviewed Ms. McKnight. *Id.* at 3.

During the interview, Ms. McKnight signed the Meriden Police Department Consent to Search form, which provided that "I Desiree McKnight have been informed of my Constitutional Right not to have search made of my property her-in-after mentioned without a search warrant and my right to refuse to consent to a search, hereby authorize the . . . Meriden Police Dept. to conduct a complete search of . . . My property located at 775 West Main St, Apt P." *Id.* Ms. McKnight was then taken to the hospital. *Id.*

Officers continued searching for evidence that would identify the home invaders, such as fingerprints, hair fibers, and bullet fragments. *Id.* at 3–4. During their search, detectives

examined the dresser drawers opened by the home invasion suspect and noticed a large clear bag containing 2,310 glassine bags filled with brown powder, which later tested positive for heroin. *Id.* at 4. Officers immediately recognized the bags as the type used to package and sell heroin on the streets; they seized 1.7 pounds of heroin, with a street value of $45,000. *Id.* Detectives also found a safe containing $33,620 in small bills. *Id.* The officers seized these items, and the $1,206 found in the living room. *Id.*

On May 7, 2014, a state court judge issued a warrant for Mr. Nealy's arrest on charges of possession of narcotics, possession with intent to sell over one ounce, possession with intent to sell within 1,500 feet of a daycare facility, and conspiracy to distribute over one ounce. *Id.* at 4. Mr. Nealy later pled guilty to the charge of possession of narcotics with intent to sell and the judge sentenced him to thirteen years imprisonment—suspended after six years—and three years of probation. *Id.* The judge also ordered that law enforcement return half of the money seized from Mr. Nealy. *Id.*

In May 2016, Mr. Nealy filed a state habeas action in state court challenging his conviction. *Id.* at 5. That action remains pending. *Id.*

On October 17, 2016, Mr. Nealy agreed to a modification of his sentence to thirteen years—suspended after fifty months—and three years of conditional discharge. *Id.* At the time, Mr. Nealy had a pending motion to correct his sentence because officers never returned the cash seized, subject to federal forfeiture. *Id.* In exchange for a downward modification, Mr. Nealy withdrew his motion. *Id.*

B.   **Procedural History**

In December 2016, Mr. Nealy filed this lawsuit in state court. *Id.* On January 6, 2017, Defendants moved to remove the case to federal court, and the Court issued a scheduling order

3

with pre-trial deadlines. ECF Nos. 1, 3.

Mr. Nealy claims that the officers exceeded the scope of the initial armed home invasion and shooting investigation. Compl., at 4. He argues that during the mayhem of police arriving, securing the crime scene, and beginning to conduct the investigation, Ms. McKnight gave consent to search the crime scene. *Id.* at 5. He contends that the authorization she gave did not include the dresser or safe where officers found the heroin and cash—but was limited to the crime scene. *Id.* According to Mr. Nealy, this search and seizure violated protocol and his due process rights. Mr. Nealy further contends that he was a guest at the residence, that officers lied on their affidavits to get his arrest warrant, and that officer searched the safe and dresser without consent or a valid search warrant. *Id.* at 6.

Mr. Nealy also states that defendants acted willfully, knowingly, maliciously, and purposefully with specific intent to deprive him of his rights to (1) due process of the law; (2) equal protection of the law; (3) freedom from racial discrimination; (4) freedom of association; (5) deprivation of liberty; and (6) cruel and unusual punishment. Compl., at 8.

On April 18, 2017, Defendants filed an Answer to the Complaint with affirmative defenses. ECF No. 8.

Following an October 10, 2017 telephonic status conference, the Court issued an amended scheduling order. ECF Nos. 16, 17. On November 13, 2017, the Court denied without prejudice a motion to appoint counsel. ECF No. 19.

On July 12, 2018, Defendants moved for summary judgment. ECF Nos. 24, 25. Mr. Nealy, however, has not yet responded to this motion.

## II. STANDARD OF REVIEW

A motion for summary judgment will be granted when the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The moving party, however, may satisfy this burden by pointing out an absence of evidence to support the non-moving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When documentary evidence and sworn affidavits supports a motion for summary judgment "demonstrate[] the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding non-moving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007)

("[A] nonmoving party must present 'significant probative evidence to create genuine issue of material fact.'") (quoting *Soto v. Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017). A court will not credit conclusory allegations or denials. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). After drawing all inferences in favor of the non-moving party, if the court finds that no reasonable trier of fact could find in the non-movant's favor and the court will find for the moving party as a matter of law and grant the summary judgment motion. *See Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

### III. DISCUSSION

Defendants allegedly violated Mr. Nealy's rights under the Connecticut Constitution, the U.S. Constitution, the laws of the United States, and the laws of the State of Connecticut. Mr. Nealy seeks monetary damages as well as declaratory and injunctive relief. The Court addresses Mr. Nealy's federal claims first because if he has no viable claims under federal law, this case should be remanded back to Connecticut Superior Court.

#### A. Fourth Amendment Search and Seizure Claim

The Fourth Amendment prohibits warrantless searches of the home, but that prohibition does not apply "to situations in which voluntary consent has been obtained, either from the individual whose property is searched [] or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). To contest a Fourth

Amendment violation, a party "must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 138 S.Ct. 1518, 1530 (2018). A defendant seeking to show a Fourth Amendment violation to a search "must show that [they] had a reasonable expectation of privacy in the place or object searched." *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017).

One need not be the owner of the property for their privacy interest to be one that the Fourth Amendment protects, "so long as [they have] the right to exclude others from dealing with the property." *United States v. Perea*, 986 F.2d 633, 639–40 (2d Cir. 1993). Indeed, "an overnight guest in a home may claim the protection of the Fourth Amendment." *See Minnesota v. Carter*, 525 U.S. 83, 90 (1998). Nevertheless, "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974); *see Fernandez v. California*, 571 U.S. 292, 294 (2014) ("Our cases firmly establish that police officers may search jointly occupied premises if one of the occupants consents").

Although not specifically alleged, the Fourth Amendment covers Mr. Nealy's illegal search and seizure and false arrest claims. Mr. Nealy argues that the Defendants exceeded the scope of the consented to search when they looked in the dresser drawer and opened the safe. Compl., at 6. He also argues that the background investigation information included in the arrest warrant affidavit is false. *Id.* In response, Defendants contend that the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Mr. Nealy's claims. ECF No. 25. Mr. Nealy has not opposed the motion.

7

In this case, Ms. McKnight signed a consent form to allow the Meriden Police Department to "conduct a complete search of . . . My property located at 775 West Main St, Apt. P." ECF No. 25, at 3. Ms. McKnight then initialed each individual provision of the form, which consented to officers seizing materials during the search. *Id.*

Under the Supreme Court's consent search decisions, "[t]he Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.'" *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). While questions of fact are appropriately the province of the jury, *see Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) ("The '[e]valuation of ambiguous acts' is a task 'for the jury,' not for the judge on summary judgment") (citation omitted), here, the undisputed facts show that Ms. McKnight, the owner of the apartment, voluntarily consented to a search. *See* ECF No. 20, at 3. And Mr. Nealy, by not responding to this motion, has presented no factual basis for contesting that the consent given was not as broad as the consent form signed by Ms. McKnight indicates. *See Georgia v. Randolph*, 547 U.S. 103, 122–23 (2006) ("a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant").

Indeed, if Mr. Nealy had given evidence that he had a reasonable expectation of privacy as an overnight guest, at best, he only had concurrent authority over the area searched with Ms. McKnight. Officers may "search jointly occupied premises if one of the occupants consents." *Fernandez*, 571 U.S. at 294. The Court therefore finds that there is no genuine issue of material fact regarding the Fourth Amendment. *See id.* at 306 ("A warrantless consent search is

reasonable and thus consistent with the Fourth Amendment irrespective of the availability of a warrant").[1]

## B. First Amendment Freedom of Association Claim

The First Amendment protects the ability "to engage in association for the advancement of beliefs and ideas." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Indeed "[o]ur form of government is built on the premise that every citizen shall have the right to engage in political expression and association," which was enshrined in the Bill of Rights. *NAACP v. Button*, 371 U.S. 415, 431 (1963).

Here, however, Mr. Nealy does not articulate any association with a group. A necessary element for application of the First Amendment's protection for freedom of association is membership with a group. *See id.* at 430 (finding that the "First and Fourteenth Amendments protect certain forms of orderly group activity"); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) ("The First Amendment's protection of expressive association is not reserved for advocacy groups. But to come within its ambit, a group must engage in some form of expression, whether it be public or private"); *Knox v. Serv. Emp. Intern. Union*, 567 U.S. 298, 309 (2012) ("the ability of like-minded individuals to associate for the purpose of expressing commonly held views may not be curtailed" under the First Amendment). Without that membership, Mr. Nealy cannot claim a constitutional violation. The Court therefore finds that there is no genuine issue of material fact regarding the First Amendment.

---

[1] Mr. Nealy also alleges a deprivation of liberty. Mr. Nealy's Fourth Amendment claim, however, is a more appropriate vehicle for this allegation. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("We have in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions").

## C. Eight Amendment Cruel and Unusual Punishment Claim

The Eighth Amendment prohibition against cruel and unusual punishment applies only to convicted prisoners. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986) ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' []and consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions'") (citing *Ingraham v. Wright*, 430 U.S. 651, 664 (1977)). As the events underlying the Complaint occurred well before Mr. Nealy pled guilty, he cannot assert an Eighth Amendment claim. The Court therefore finds that there is no genuine issue of material fact regarding the Eight Amendment.

## D. Fourteenth Amendment Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects fundamental rights and liberties that are "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Moore v. East Cleveland*, 43 U.S. 494, 503 (1997)). In those cases where there is a challenge on substantive due process grounds, the Supreme Court requires "a 'careful description' of the asserted fundamental liberty interest." *Id.* (citations omitted).

Here, as previously mentioned, there has been no facts alleged to create a substantive right violation. The Court therefore finds that there is no genuine issue of material fact regarding due process under the Fourteenth Amendment. *See Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 125 (1992) ("the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended").

### E. Fourteenth Amendment Equal Protection Claim

The Fourteenth Amendment "requires the consideration of whether the classifications drawn by any statute constitute an arbitrary and invidious discrimination. The clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination in the States." *Loving v. Virginia*, 388 U.S. 1, 10 (1967). The "central purpose is to prevent the States from purposefully discriminating between individuals on the basis of race." *Shaw v. Reno*, 509 U.S. 630, 642 (1993). And laws that "explicitly distinguish between individuals on racial grounds fall within the core of that prohibition." *Id.*

Mr. Nealy, however, has made no showing that his race, or any other classification, was the basis for any disparate treatment. In fact, the Complaint makes no suggestion that the defendants arrested Mr. Nealy because of his race, or that officers treated him differently from any similarly situated person. Absent an illicit or invidious classification, there is no equal protection violation. *See Plyler v. Doe*, 457 U.S. 202, 213 (1982) ("The Equal Protection Clause was intended to work nothing less than the abolition of all caste-based and invidious class-based legislation. That objective is fundamentally at odds with the power the State asserts here to classify persons subject to its laws as nonetheless excepted from its protection"). The Court therefore finds that there is no genuine issue of material fact regarding equal protection under the Fourteenth Amendment.[2]

In sum, Defendants have met their burden, and the Court cannot find factual support for any of the underlying constitutional claims brought under this § 1983 action. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995) ("In moving for summary judgment

---

[2] Mr. Nealy also alleges that officers violated his right to be free from racial discrimination. The Court, however, addressed this in the analysis of his Fourteenth Amendment claim. *See Washington v. Davis*, 426 U.S. 229, 239 (1976) ("The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race").

against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if [they] can point to an absence of evidence to support an essential element of the nonmoving party's claim").

"When the moving party meets this burden, the burden shifts to the nonmoving party to come forward with 'specific facts showing that there is a genuine issue for trial.'" *PepsiCo*, 314 F.3d at 105. Here, defendants' have shown that there is both an absence of evidence and a failure to demonstrate that there is a genuine issue of material fact for the purposes of trial. Mr. Nealy, however, has not responded to this motion for summary judgment, and has therefore did not meet his burden.

Because Mr. Nealy's federal statutory claims do not independently give rise to relief under Section 1983, *see Whitnum v. Emons*, No. 3:15-cv-959 (SRU), 2016 WL 2644886, at *2 (D. Conn. May 9, 2016) ("Section 1983 is the mechanism that a plaintiff may use to bring a cause of action in federal court based on a perceived violation of the U.S. Constitution . . . Unless a plaintiff can point to another statutory provision or judicial doctrine that permits individuals to bring an action to enforce a constitutional right, a plaintiff who fails to meet the elements of Section 1983 may not bring a constitutional claim in federal court"), those claims are dismissed as well.

Having dismissed Mr. Nealy's federal claims, the Court declines to take supplemental jurisdiction over Mr. Nealy's remaining state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction'") (citing 28 U.S.C. § 1367(c)(3)).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** as to Mr. Nealy's federal claims.

The Court also declines to take supplemental jurisdiction over Mr. Nealy's remaining state law claims and therefore remands the case back to Connecticut Superior Court.

SO ORDERED at Bridgeport, Connecticut, this 29th day of November 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE